United States District Court
Southern District of Texas

**ENTERED**

September 30, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL TRUST INSURANCE COMPANY, | § § § | |
| *Plaintiff.* | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-01826 |
| FIGURE FOUR PARTNERS, LTD., ET AL., | § § § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion to Abstain. *See* Dkt. 13. Plaintiff National Trust Insurance Company ("NTIC") and Intervenors, The Travelers Indemnity Company of America and The Travelers Property Casualty Company (collectively, "Travelers"), oppose the motion. After reviewing the briefing submitted by all parties, analyzing the applicable case law, and listening to oral argument, I **RECOMMEND** that the motion be **GRANTED**.

## BACKGROUND

Figure Four Partners, Ltd. ("Figure Four") purchased a tract of land near Kingwood, Texas, in 2018 for development of single-family homes. This project is known as the Woodridge Development. PSWA, Inc. ("PSWA") is Figure Four's general partner. Rebel Contractors, Inc. ("Rebel Contractors") and Texasite LLC ("Texasite") performed various work on the Woodridge Development relating to the excavation and construction of detention ponds, and installation of drainage and sewer lines.

In connection with its work at the Woodbridge Development, Rebel Contractors and Texasite each obtained general liability insurance.  More specifically, NTIC issued two insurance policies to Rebel Contractors, and Travelers issued two insurance policies to Texasite.  The relevant insurance policies named Figure Four as an additional insured.

In May and September 2019, heavy rains hit the Houston area hard.  The Elm Grove subdivision, located adjacent to the Woodridge Development, flooded.  Numerous Elm Grove homeowners filed lawsuits in Harris County, Texas, alleging that the flooding was caused by the clearing, grading, drainage, and other real estate development activities taking place in connection with the Woodridge Development.  Those lawsuits, which named Figure Four and PSWA as defendants, were consolidated into a single case (the "Underlying Lawsuit").

In late 2019, Figure Four requested defense and indemnity from Rebel Contractors and Texasite.  Figure Four also requested that NTIC and Travelers provide additional insured coverage under the applicable insurance policies.  NTIC and Travelers have denied additional insured coverage to Figure Four, arguing that the Texas Anti-Indemnity Act voids the additional insured coverage.

On the morning of May 26, 2020, Figure Four filed a lawsuit in state court in Harris County, Texas, seeking defense and indemnity from NTIC, Travelers, Rebel Contractors, and Texasite, along with another contractor.  As part of that lawsuit, Figure Four asserted a breach of contract claim against NTIC and Travelers regarding the additional insured coverage.  Figure Four also sought a declaratory judgment against NTIC and Travelers that the additional insured provisions do not run afoul of the Texas Anti-Indemnity Act.

2

Travelers filed a counterclaim in the state court lawsuit, seeking a declaratory judgment that Figure Four is not entitled to defense and indemnity as an additional insured.

On the same day that Figure Four filed its lawsuit in state court, May 26, 2020, NTIC filed this federal action against Figure Four and PSWA pursuant to the Federal Declaratory Judgment Act.  In the federal suit, NTIC seeks a declaration that the additional insured provisions in dispute are void and unenforceable because they violate the Texas Anti-Indemnity Act.  Travelers has filed an intervention in this case, seeking similar declarations to those requested in the state court action.

Presently before me is Defendants' Motion to Abstain.  Figure Four and PSWA ask this Court to refrain from exercising jurisdiction over the declaratory judgment actions brought by NTIC and Travelers because the pending state court lawsuit presents the same claims, all premised on state substantive law, at issue in this case.

## ANALYSIS

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  *See also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983) (noting that the Declaratory Judgment Act bestows "a choice, not a command" on a district court).  Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*,

996 F.2d 774, 778 (5th Cir. 1993).  For example, dismissing a declaratory judgment action based on nothing but a "whim or personal disinclination" would be an abuse of the district court's broad discretion.  *Rowan Cos. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989).

In deciding whether to abstain from exercising jurisdiction in a declaratory judgment action, a district court must consider: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F. 3d 383, 387 (5th Cir. 2003).  Here, there is no dispute that NTIC presents a justiciable claim, and the district court has the authority to decide the declaratory judgment suit.  The only remaining consideration is the third prong—whether I should accept or decline jurisdiction over the declaratory judgment action.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Wilton*, 515 U.S. at 288.

The Fifth Circuit has identified seven nonexclusive factors that should guide a district court considering whether to decide or dismiss a declaratory judgment action:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).  These nonexclusive *Trejo* factors ensure district courts considering whether to exercise jurisdiction over a declaratory judgment suit adhere to three fundamental principles of our justice system: federalism, fairness, and efficiency.  *See Sherwin-Williams Co.*, 343 F. 3d at 390–91.

Applying these factors to the case at hand, I begin by noting that factor one strongly weighs in favor of dismissal.  There is undeniably a pending state action in which all of the matters in controversy may be fully litigated.  Indeed, Figure Four has filed a declaratory judgment action in state court addressing precisely the issue raised in this case—whether the additional insured coverage is rendered null and void by the Texas Anti-Indemnity Act. As the Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).  "[I]f the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit."  *Sherwin-Williams Co.*, 343 F.3d

5

at 390–91.   Consistent with these principles, courts routinely abstain from entertaining declaratory judgment actions involving insurance coverage disputes with parallel state court proceedings—just like the situation here.   *See Wilton*, 515 U.S. at 290; *Brillhart*, 316 U.S. at 495; *Evanston Ins. Co. v. Tonmar, LP*, 669 F. Supp. 2d 725, 727 (N.D. Tex. 2009).

The next three *Trejo* factors—whether NTIC filed suit in anticipation of a lawsuit filed by the Developers, whether NTIC engaged in forum shopping in bringing the suit, and whether possible inequities in allowing NTIC to gain precedence in time or to change forums exist—"analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds."   *Sherwin-Williams Co.*, 343 F.3d at 391.   In this case, there is absolutely no evidence that NTIC engaged in improper forum shopping or filed this suit in anticipation of Figure Four and PSWA filing suit.   *See Canal Ins. Co. v. XMEX Transp., LLC*, 1 F. Supp. 3d 516, 528 (W.D. Tex. 2014) (filing a declaratory judgment action in federal court with jurisdiction to hear it is not abusive forum shopping).   At oral argument, Figure Four and PSWA's counsel readily acknowledged that NTIC did not race to the federal courthouse to gain some sort of advantage.   The dispute over whether Figure Four was entitled to additional insured coverage had been simmering for months.   Apparently, it was pure coincidence that the two competing declaratory judgment actions—one in state court and one in federal court—happened to be filed on the same day in May 2020.   Accordingly, factors two, three, and four favor retaining jurisdiction.

Factor five asks whether the federal court is a convenient forum for the parties and the witnesses.   "The federal and state courthouses in [Houston] are mere blocks apart, and

neither party argues that proceeding in federal court would be more or less convenient for any participant in the [c]ase." *Id.* at 531. This factor is, therefore, neutral.

The crux of the present fight over whether I should decide or dismiss this declaratory judgment action hinges on the sixth factor: whether retaining the lawsuit would serve the purposes of judicial economy. NTIC argues that the discrete legal issues to be decided in this declaratory judgment action can be more effectively resolved in federal court. In short, NTIC's position is that a federal court can quickly decide on summary judgment the central legal issue underlying this dispute: application of the Texas Anti-Indemnity statute. By issuing such a ruling, NTIC posits, most, if not all, of the disputed issues pending in the state court action will go away.

Figure Four and PSWA strongly disagree that a summary judgment ruling by this Court will dispose of the state court case. But even if I assume that a prompt decision by this Court on the applicability of the Texas Anti-Indemnity statute will likely resolve the parallel state court litigation, the fact remains that the judge handling the state court litigation is equally capable of issuing a swift ruling on the same legal issues. I actually see no reason to expect that a ruling from this Court would necessarily occur any sooner than a decision from the state court judge on the same motion. As pointed out above, the state court case already includes claims for declaratory judgment on the same insurance coverage issues involved in federal court. Nothing prevents the parties from filing summary judgment motions in the state court action immediately.

To me, it makes little sense to have two separate lawsuits—one in state court and one in federal court—involving the same parties and the same legal issues. "The only

issues in the present case are state-law issues, and they are best resolved by the [state] court that is already considering the disputes among these parties." *Evanston Ins. Co.*, 669 F. Supp. 2d at 734.  *See also TIG Ins. Co. v. Fairchild Corp.*, No. 07 Civ. 8250 (JGK), 2008 WL 2198087, at *3 (S.D.N.Y.  May 27, 2008) ("Insurance disputes, such as the present case, generally present strong reasons for a federal court to abstain because such claims are intimately tied to matters of state law which are being litigated in state court.").  Duplicative litigation raises federalism concerns "because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues." *Sherwin-Williams Co.*, 343 F.3d at 391.  Efficiency also favors abstention.  "It is a waste of judicial resources to litigate a federal declaratory judgment action involving only issues of state law that are already being litigated in" state court.  *Evanston Ins. Co.*, 669 F. Supp. 2d at 734.  *See also Sherwin-Williams Co.*, 343 F.3d at 391 ("A federal district court should avoid duplicative or piecemeal litigation where possible.").  Because it is inefficient and unnecessary for a federal court to address strictly state law issues when there is a state court lawsuit already pending, factor six tilts toward abstention.

The seventh factor—whether the federal court is being called on to construe a state judicial decree—is not at issue in the present case.  As a result, this factor is neutral.

Overall, the first and sixth *Trejo* factors strongly favor abstaining from deciding this declaratory judgment action.  The second, third, and fourth factors weigh in favor of retaining jurisdiction.  Factors five and seven are neutral.  All that being said, the analysis I am required to conduct in deciding whether to abstain from this declaratory judgment

action demands a qualitative assessment, not simply a quantitative determination of who amasses the most factors.

After carefully considering the seven non-exclusive *Trejo* factors, I am convinced that the core principles of fairness, federalism, and efficiency all favor abstention. Judicial economy would be best served by allowing the state court handling the parallel lawsuit to proceed to conclusion. All the issues in this case can be fully and promptly decided in the state court action. Thus, I recommend the Motion to Abstain be granted, and this case dismissed.

## CONCLUSION

I **RECOMMEND** that the Motion to Abstain (Dkt. 13) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 30th day of September, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE